906 F.2d 713
 285 U.S.App.D.C. 19
 PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
United States Telephone Association, et al., Intervenors.
 No. 88-1771.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 15, 1989.
Decided June 22, 1990.
 
 Howard C. Davenport, with whom Mary J. Sisak, Thomas J. Moorman, Peter G. Wolfe, and S. Keith Townsend were on the brief, for petitioner.
 Linda L. Oliver, Counsel, Federal Communications Com'n ("FCC"), with whom James F. Rill, Asst. Atty. Gen., Catherine G. O'Sullivan and Andrea Limmer, Attys., U.S. Dept. of Justice, and Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and John E. Ingle, Deputy Associate Gen. Counsel, FCC, were on the brief, for respondents.
 
 
 1
 Martin T. McCue, for United States Telephone Ass'n, R. Frost Branon, Jr., for Bell South Corp., et al., Gail L. Polivy, for GTE Service Corp., Saul Fisher, for New York Telephone Co. and New England Tel. & Tel. Co., James P. Tuthill, John W. Bogy, and Stanley J. Moore, for Pacific Bell and Nevada Bell, William C. Sullivan, Richard C. Hartgrove, and Patricia J. Nobles, for Southwestern Bell Telephone Co., and Robert B. McKenna, for Mountain States Tel. & Tel. Co., Northwestern Bell Telephone Co. and Pacific Northwest Bell Telephone Co., were on the joint brief, for intervening local telephone companies. William B. Barfield, for Bell South Corp., et al., Nancy K. McMahon, for Pacific Bell and Nevada Bell, Michael A. Meyer and Melanie S. Fannin, for Southwestern Bell Telephone Co., Martin J. Silverman and Mary McDermott, for New York Telephone Co., et al., and James R. Hobson, for GTE Service Corp. entered appearances, for intervening local telephone companies.
 
 
 2
 David Cosson and Denise M. Drialo entered appearances, for intervenor National Telephone Co-op. Ass'n.
 
 
 3
 Thomas L. Welch, David K. Hall, and Mark J. Mathis entered appearances, for intervenors Bell Atlantic Telephone Co.
 
 
 4
 Alfred Winchell Whittaker and Floyd S. Keene entered appearances, for intervenors The Ameritech Operating Cos., et al.
 
 
 5
 Lisa M. Zaina entered an appearance, for intervenor Organization for the Protection and Advancement of Small Telephone Cos.
 
 
 6
 Richard A. Rocchini entered an appearance, for intervenor American Tel. & Tel. Co.
 
 
 7
 L. Marie Guillory entered an appearance, for amicus curiae District of Columbia Office of the People's Counsel, urging reversal.
 
 
 8
 Before MIKVA, SILBERMAN and BUCKLEY, Circuit Judges.
 
 
 9
 Opinion for the court filed by Circuit Judge BUCKLEY.
 
 BUCKLEY, Circuit Judge:
 
 10
 The Public Service Commission of the District of Columbia seeks review of a Federal Communications Commission order approving a revised separations manual used by telephone companies in allocating their costs between federal and state regulatory jurisdictions. It alleges that the agency did not give adequate notice of the changes as required by the Administrative Procedure Act and did not justify its conclusion that the changes (a) would reduce the burden of complying with the separations procedures without substantially sacrificing accuracy and (b) would not prompt an unreasonable shift of costs between the interstate and intrastate jurisdictions. We reject these contentions and deny the petition for review.
 
 I. BACKGROUND
 
 11
 The Public Service Commission of the District of Columbia ("PSC") objects to a Federal Communications Commission order that implemented changes in the "separations manual" used by telephone companies to divide their costs of service between federal and state jurisdictions for ratemaking purposes. Such a division is necessary because the Federal Communications Act ("Act") denies the Commission jurisdiction over purely intrastate communication. See 47 U.S.C. Sec. 152(b) (1982).
 
 
 12
 Because most of the equipment employed by telephone companies in the provision of services is used for both intrastate and interstate and foreign communication, it is necessary to separate, or allocate, their costs between federal and state jurisdictions for the purpose of setting rates, which are based on costs. The Act assigns responsibility for this separation to the Commission. 47 U.S.C. Sec. 221(c) (1982). In recognition of the State's obvious interest in how this jurisdictional separation is performed, however, Congress has required the Commission to refer new rulemaking on the subject to a special Federal-State Joint Board ("Board"). 47 U.S.C. Secs. 221(c), 410(c). The Board prepares a recommended decision, which the Commission must promptly review and act upon. Id. The FCC's final decision becomes binding on the States. See Hawaiian Tel. Co. v. Public Util. Comm'n of Hawaii, 827 F.2d 1264, 1275-76 (9th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988).
 
 
 13
 The proceedings in this case began in July 1986, when the FCC initiated the process of changing its separations procedures, a move necessitated by a prior change in its Uniform System of Accounts ("USOA") to which the separations procedures were geared. The changes in the USOA were designed to increase the accuracy of the procedures used by telephone companies to account for their interstate activities and to make those procedures more consistent with modern accounting principles. The FCC ultimately adopted a two-tiered approach, applying simpler, less burdensome accounting requirements to the smaller carriers (designated "Class B" carriers) than it did to the larger ones (designated "Class A" carriers). The revised USOA was codified at 47 C.F.R. Part 32 (1988).
 
 
 14
 The notice of the proposed changes in the separations procedures, codified in 47 C.F.R. Part 67, stated in its introduction that
 
 
 15
 [t]he primary purpose of this proceeding is to develop new jurisdictional separations procedures that are required to conform Part 67 of the Commission's Rules to the new USOA (Part 32) adopted on May 1, 1986. We are also seeking to simplify the procedures set forth in Part 67.
 
 
 16
 Notice of Proposed Rulemaking and Order Establishing a Federal-State Joint Board, CC Docket No. 86-297, at 1 (July 8, 1986) ("Initial Notice"). In addition, the Initial Notice specified that the proceeding
 
 
 17
 should not be limited to the minimal changes that will be necessary to conform the Separations Manual with the new USOA.... We are also asking this Joint Board to recommend additional modifications that should make it easier for carriers to comply with the separations process.
 
 
 18
 Id. at 2.
 
 
 19
 Following the Initial Notice, the Board sought comments and data on the proposed revision in the separations procedure. Order Inviting Comments and Request for Data, CC Docket No. 86-297 (July 25, 1986) ("Comments Order"). The Board reviewed the responses and, on April 8, 1987, it issued its recommendation. Recommended Decision and Order, 2 F.C.C. Rcd. 2582 (1987). In it, the Board recommended that the simpler Class B separations manual be used by all carriers. The Board acknowledged that the Class B manual, as originally proposed in the Comments Order, might result in unacceptable interjurisdictional shifts in revenue requirements if used by both Class A carriers and Class B carriers alike. 2 F.C.C. Rcd. at 2585. The Board concluded, however, that it could compensate for these discrepancies through the use of different allocators by the two classes of carriers for certain costs.
 
 
 20
 Allocators are parts of computer models used to apportion revenue requirements according to various costs. The Board determined on the basis of the data submitted that if it modified the Class B manual so as to use a plant-based allocator for Class B carriers and an expense-based one for Class A carriers in one category of the computer models, the use of the Class B manual would result in a revenue shift to the interstate jurisdiction of only $64 million. This "bifurcated allocator" approach thus produced even less of a revenue shift than the $72 million or 0.43 percent shift of total revenue requirements that would have been produced by a modification proposed by several major carriers in their comments submissions. Id. Moreover, the Board concluded that the modified Class B manual could achieve the stated objective of conforming the separations process to the new USOA without incurring what the Board saw as the unnecessary burdens of the more complex Class A manual which, it maintained, did not clearly ensure greater accuracy. 2 F.C.C. Rcd. at 2586.
 
 
 21
 On May 1, the Commission adopted the Board's recommended decision. Report and Order, 2 F.C.C. Rcd. 2639 (1987). The PSC petitioned for reconsideration. It argued, inter alia, that the adoption of the Class B manual for Class A carriers would sacrifice accuracy in the separations process and cause a reallocation or shift of over $10 million in costs, representing 6.17 percent of intrastate revenue requirements for the D.C. jurisdiction, from the federal rate-making jurisdiction to that of the District, with a resulting increase in local rates. It also argued that the FCC order was arbitrary and capricious because it was not preceded by adequate notice and opportunity for comment, in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 553(b) & (c) (1988) ("APA").
 
 
 22
 On August 8, 1988, the Commission rejected all of the PSC's complaints. Order on Reconsideration, 3 F.C.C. Rcd. 5518 (1988). The FCC pointed to the large number of comments the Board had received, the actual notice to the PSC, and the subsequent submission of comments by the PSC as evidence that notice had been adequate. The FCC further defended its use of an expense-based, as opposed to plant-based, allocator for Class A carriers on the grounds that, despite producing somewhat larger shifts in the District's jurisdictional rate base, it minimized such shifts nationwide. As the converse was true for Class B carriers, the Commission concluded that the bifurcated allocator approach would minimize the total amount of cost reallocation. Id. at 5528. The PSC petitions for review of this order, arguing that (a) the Initial Notice was inadequate under the notice and comment requirement of the APA, and (b) the Commission failed adequately to justify its conclusions that the use of the Class B manual by all carriers would not unreasonably sacrifice accuracy and would not lead to unreasonable shifts in costs between jurisdictions.
 
 II. DISCUSSION
 
 23
 The PSC first argues that the FCC's failure to provide notice and an opportunity to comment on the adoption of a unified separations manual violated the provisions of the APA. The PSC points out that while the Board, in its Comment Order, emphasized that the Class A manual aimed at conforming separations procedures to the recently revised Uniform System of Accounting ("USOA"), its final decision was at odds with this notice because it recommended unified procedures for Class A and Class B carriers despite the difference in treatment of these two classes by the USOA itself. Next, the PSC argues that the Commission also violated the APA by not justifying its conclusion that the adoption of the Class B manual for all carriers would reduce the burden of compliance without substantially reducing the accuracy of cost allocations. Finally, the PSC argues that the FCC again violated the APA by failing to justify its conclusion that the use of the Class B manual by all carriers would not result in significant jurisdictional cost shifts. We address these three arguments in turn.
 
 A. Adequacy of Notice
 
 24
 We begin by observing that the kind of informal rule-making at issue here must comply with the notice and comment provisions of the APA. When opportunity for such notice and comment is inadequate, remand is frequently the correct remedy. See Reeder v. FCC, 865 F.2d 1298, 1304-05 (D.C.Cir.1989). The PSC contends that the Initial Notice and the Comments Order did not constitute adequate notice under the APA to support the Commission's final order on the adoption of a unified separations manual. It argues that because the Comments Order stated that the primary purpose of the proceeding was to conform the separations procedure to the USOA, it was only with respect to this general goal that interested parties were given the opportunity to comment. Petitioner contends that the notice that the Class B manual might be used for Class A carriers was insufficient because it was phrased as a permissive suggestion: "Commentators should address the issue of whether ... Class A carriers should be allowed to use the simplified Class B Manual." Comments Order at 7.
 
 
 25
 Section 553 of the Administrative Procedure Act requires that general notice of proposed rulemaking be published in the Federal Register, and that the notice include, inter alia, "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. Sec. 553(b). It further requires that interested persons be provided "an opportunity to participate in the rule making through submission of written data, views or arguments with or without opportunity for oral presentation." Id. Sec. 553(c). It is well established that the exact result reached after a notice and comment rulemaking need not be set out in the initial notice for the notice to be sufficient. Rather, the final rule must be "a logical outgrowth" of the rule proposed. AFL-CIO v. Donovan, 757 F.2d 330, 338 (D.C.Cir.1985); United Steelworkers v. Marshall, 647 F.2d 1189, 1221 (D.C.Cir.1980), cert. denied sub nom. Lead Industries Ass'n v. Donovan, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981).
 
 
 26
 We find that the final rule issued here is not so removed from the considerations noticed in the Comments Order that it cannot be considered their logical outgrowth. In a recent decision involving this requirement, we found that a reasonable attempt to accommodate commentators by responding to their suggestions for changes does not render a final rule something other than a logical outgrowth of the original proposal:
 
 
 27
 [A] final rule may properly differ from a proposed rule--and indeed must so differ--when the record evidence warrants the change. A contrary rule would lead to the absurdity that in rule-making under the APA the agency can learn from the comments on its proposals only at the peril of starting a new procedural round of commentary.
 
 
 28
 Edison Elec. Inst. v. OSHA, 849 F.2d 611, 621 (D.C.Cir.1988) (citations omitted). The Board's recommended decision in this case is certainly one that the PSC should have considered a possibility, given the language of the Comments Order concerning simplification and the possibility of unified separations procedures.
 
 
 29
 The PSC asserts, however, that because the Initial Order set out "conformity" with the USOA as a primary goal, and as this goal was not achieved, the order cannot be a "logical outgrowth" with respect to Class A carriers. This argument is not persuasive. First, it assumes that conformity was the only goal of that procedure. But, as the Comments Order states, simplification was also an announced objective of the rulemaking. Moreover, the PSC had actual notice of the scope of the proceedings. In its comments to the Board, the PSC itself discussed the application of the Class B manual to Class A carriers. It is difficult to see how the PSC was denied adequate notice when it filed both comments and reply comments specifically on this issue. Furthermore, the PSC has not shown what additional arguments would have been made if the Board had initiated another round of public comments. See Air Transp. Ass'n v. CAB, 732 F.2d 219, 224 & n. 11 (D.C.Cir.1984). In light of these considerations, we hold that the notice provided by the Commission was adequate.
 
 
 30
 B. The Commission's Justification of its Conclusions With Respect to the Class B Manual
 
 
 31
 The PSC makes two broad arguments to the effect that the FCC did not justify its conclusions with respect to Class A and B manuals. First, the PSC asserts that the Commission provided no support for its conclusion that the Class A manual provided only the illusion of precision. As a corollary, it argues that the Commission failed to show how the Class A manual was significantly more burdensome than the prior separations manual. Second, the PSC claims that the Commission failed to support its conclusion that use of the Class B manual by all carriers would not result in large jurisdictional cost shifts.
 
 
 32
 1. Conclusions on the Manuals' Precision and Burden
 
 
 33
 Petitioner contends that the more abbreviated methodology of the Class B manual, though perhaps acceptable for smaller carriers, is far less accurate for larger carriers than the more detailed methodology of the Class A manual, and that the Commission's contrary conclusion was not justified. The facts in the record justify the Board's conclusions on both burden and accuracy. Numerous comments show that the maintenance of two separate manuals would impose needless costs and create only an illusion of accuracy, and these were specifically relied upon by the Board in its recommendation. See Recommended Decision and Order, 2 F.C.C. Rcd. at 2599.
 
 2. Jurisdictional Cost Shifts
 
 34
 The PSC points to the passage in the Comments Order that anticipated "minimal or no expected revenue requirement shifts" between federal and state jurisdictions and argues that the conceded net shift of $64 million to the interstate jurisdiction, 2 F.C.C. Rcd. at 2586, caused by adoption of the modified Class B manual for all carriers, is therefore at odds with the initial proposals. The Commission, however, was under no obligation to foreclose any jurisdictional shifts. As already noted, the $64 million shift resulting from the use of the Class B manual represented a net shift of less than one percent nationwide. The Commission did concede a possible $10 million shift into the District of Columbia; the Commission, however, rightly argued that it cannot remedy that shift by maintaining what it believes to be a burdensome and unnecessarily complex manual for all other Class A carriers in the rest of the country. The data indicated to the Commission that use of an expense-based allocator for the Class A carriers and a plant-based allocator for the Class B carriers would minimize jurisdictional shifts nationwide. Order on Reconsideration, 3 F.C.C. Rcd. at 5528. Moreover, the FCC stated that it would monitor any shifts in revenue so that larger-than-expected reallocations can be identified. Id. The Commission's decision to minimize jurisdictional shifts nationally despite some possible greater-than-average effects on the District is reasonable.
 
 III. CONCLUSION
 
 35
 Decisions of the Commission in the area of separations policy are entitled to great deference. Much of the decisionmaking process is inherently judgmental as it involves the balancing of economic effects on various parties as well as elements of fairness. MCI Telecommunications Corp. v. FCC, 675 F.2d 408, 415-16 (D.C.Cir.1982). Decisions will be overturned only if arbitrary and capricious. Id. at 417. The Commission's orders have dealt thoroughly with the issues involved and reached a reasonable conclusion that the adoption of the Class B manual for all carriers, together with the use of a bifurcated allocator for jurisdictional cost calculation, would best achieve the combined goals of simplicity, conformity, and minimization of jurisdictional cost shifts.
 
 The petition for review is
 
 36
 Denied.